**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Manuel Casas JIMENEZ,
Defendant-Appellant.**

**No. 79–5110.**

United States Court of Appeals,
Fifth Circuit.

March 21, 1980.

Before TUTTLE, FAY and THOMAS A. CLARK, Circuit Judges.

FAY, Circuit Judge:

Manuel Jiminez appeals from his December 6, 1978, conviction of heroin distribution in violation of 21 U.S.C. § 841(a)(1) (1976). Appellant Jiminez alleges that reversible error occurred in his jury trial when government counsel cross-examined appellant about his possession of cocaine in unrelated circumstances occurring more than a year after the offense charged. Finding this uncorroborated and prejudicial accusation of an extrinsic offense to be contravention of Fed.R.Evid. 404(b), we reverse and remand for retrial. Additionally, we caution government counsel on retrial to comply with Fed.R.Evid. 612 and the Jencks Act, 18 U.S.C. § 3500 (1976), in any use of police surveillance reports to refresh witnesses' memories.

Appellant Jiminez has never denied consummating the illegal transaction alleged in his indictment. At trial he acknowledged that on October 21, 1977, he sold one ounce of heroin to Pedro Hernandez, a federal Drug Enforcement Administration agent who was working undercover. However, appellant asserted an entrapment defense. He claimed that agent Hernandez and informant Cho Chi Escomellia persuaded him to locate and sell the contraband for money to get appellant's older brother out of jail.

## EXTRINSIC OFFENSE EVIDENCE

In his efforts to establish his asserted defense, appellant testified on direct examination that until the alleged heroin sale, he had never trafficked in drugs. On cross-examination, government counsel sought to rebut appellant's professed prior innocence and to reveal a predisposition on appellant's part to make such a sale.

Pursuant to that goal the prosecutor questioned appellant about his purported cocaine possession a year later at his arrest

Frank Jackson (Court-appointed), Dallas, Tex., for defendant-appellant.

Shirley Baccus-Lobel, Asst. U.S. Atty., Dallas, Tex., for plaintiff-appellee.

on the heroin charge.[1] Appellant now challenges under Fed.R.Evid. 404(b) [2] the admissibility of that inquiry. To meet the requirements of Fed.R.Evid. 404(b), such extrinsic offense evidence must clear both admissibility hurdles set up in *United States v. Beechum,* 582 F.2d 898, 911 (5th Cir. 1978), *cert. denied,* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979). "First, it must be determined that the extrinsic offense evidence is relevant to an issue other than the defendant's character. Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of rule 403." [3] *Id.*

■ The predicate to relevance of an extrinsic offense is proof that the defendant actually committed the offense. *Id.* at 912–13. The government need only produce evidence which would withstand a directed verdict on the extrinsic offense. *United States v. Byers,* 600 F.2d 1130, 1132 (5th Cir. 1979); *United States v. Beechum,* 582 F.2d at 913. In this case, the extrinsic offense evidence loses the race toward admissibility before even reaching the starting mark. Appellant Jiminez steadfastly denied any knowledge of the cocaine's presence in his room prior to its discovery, and the record suggests that appellant may even have shared with another the room where the cocaine was found. Moreover, the record reveals no testimony corroborative of the prosecutor's accusations, nor even any indication that appellant had ever been formally charged with cocaine possession. Under these circumstances, no reasonable jury could have found appellant guilty of the alleged cocaine possession. Consequently, the extrinsic offense evidence failed to clear the *Beechum* probity hurdle and should not have been admitted.

■ Even had the extrinsic offense evidence passed the first test, however, it would have faltered at the second obstacle. A year had lapsed between the heroin deal and appellant's alleged cocaine possession. Although we do not suggest that subsequent extrinsic offense evidence could never be admitted under rule 404(b), it certainly bears substantially less on predisposition than would a prior extrinsic offense. *United States v. Daniels,* 572 F.2d 535, 538–39 (5th Cir. 1978). We find that the expiration of the considerable length of time in this case depleted the extrinsic offense of any relevance which could have outweighed the peril of jury prejudice. *See United States v. Hitsman,* 604 F.2d 443, 448 (5th Cir. 1979); *United States v. Byers,* 600 F.2d at 1133; *United States v. Daniels,* 572 F.2d at 538–39.

---

1. The prosecutor's cross-examination of appellant with regard to the alleged cocaine possession was as follows:

Q Of course, you don't have anything to do with drugs, do you?
A No, sir.
Q I see. As a matter of fact, at the time you were arrested you had cocaine in your possession, did you not?
A When, sir? Arrested when?
Q When you were arrested in October of this year?
A Yes, sir.
Q You had cocaine, didn't you?
A I didn't have it on me, no, sir.
Q You had it in your possession, didn't you?
A No, sir.
Q I see. Just another coincidence?
A They were in my room and searched for it and found it.
Q In your room?
A I didn't know it was in there.
Q Another coincidence, is it?
A I don't know, sir.

2. Fed.R.Evid. 404(b) provides:
*Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

3. Fed.R.Evid. 403 provides:
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

■ Additionally, the record fails to reveal any limiting jury instructions which might have ameliorated the prejudicial nature of the cocaine possession evidence. While sustaining defense counsel's objection to the extrinsic offense evidence, the trial judge stated only, "I will so instruct the jury." [4] The jury charge at the close of the evidence contained no more expository instructions. Although the lack of curative instructions does not invariably mandate mistrial, a judge should carefully limit the use of extrinsic offense evidence whenever any possibility of undue prejudice exists. *United States v. Contreras,* 602 F.2d 1237, 1240 (5th Cir. 1979); *United States v. Aleman,* 592 F.2d 881, 886 (5th Cir. 1979); *United States v. Underwood,* 588 F.2d 1073, 1076–77 (5th Cir. 1979); *United States v. Jackson,* 588 F.2d 1046, 1056 (5th Cir.), *cert. denied,* —— U.S. ——, 99 S.Ct. 2882, 61 L.Ed.2d 310 (1979).

■ Even the most careful of instructions, however, would not have sufficiently limited the prejudicial nature of the extrinsic offense evidence in this case. For its limited probative value, evidence of the subsequent offense posed too great a risk of improper jury decision on the basis of appellant's character or propensity to commit drug-related offenses.[5] Because this extrinsic offense evidence can never overcome the obstacle of impermissible prejudice, it will not be admissible at appellant's retrial even if government counsel could produce corroborative evidence which would satisfy the first level of the *Beechum* test.

## POLICE SURVEILLANCE REPORT

Appellant contends that reversible error occurred when the prosecutor showed to Leonard Alphin, a surveillance agent and government witness, a police surveillance report from which the agent admittedly had already refreshed his memory. Although other grounds have already dictated reversal, we nonetheless review the claim because the surveillance report may well be used at appellant's retrial. *See United States v. Daniels,* 572 F.2d at 539.

■ We need not determine whether the surveillance report was subject to the Jencks Act, 18 U.S.C. § 3500 (1976), to answer appellant's claims. If the report was not Jencks Act material, it fell under Fed. R.Evid. 612.[6] Under rule 612, the prosecutor should have prefaced the agent's testi-

---

4. Defense counsel's objection and request for charge and the court's response were as follows:

MR. JACKSON: Your Honor, I am going to object to this. That constitutes an inadmissible offense.

THE COURT: I sustain the objection. The United States Attorney, (the defense attorney and the Court were talking at once and the court reporter did not understand.)

MR. JACKSON: Your Honor, Mr. Guthrie knows that is a totally improper question without laying a proper predicate. He knows that is a prejudicial and inflammatory type question to ask before the jury and I move for a mistrial at this point.

THE COURT: I overrule your motion.

MR. GUTHRIE: Your Honor, may I be heard on this?

THE COURT: Certainly.

MR. GUTHRIE: I believe that the last question asked by the defense counsel when the defendant has testified as to his non-involvement in drugs and I think we are entitled to explore that with this defendant. I think it is also admissible to show his predisposition since he is trying to use the defense of entrapment. We ask that the Court overrule his objection.

MR. JACKSON: Your Honor, I would object to this on the grounds the prosecutor is attempting to inject into this particular trial an extraneous matter which is prejudicial and inflammatory and it is irrelevant, immaterial, has no bearing on this particular case and I think it deprives the defendant of a right to a fair trial under the Fifth and Fourteenth Amendments to the Constitution of the United States.

THE COURT: I sustain the objection.

MR. JACKSON: And I will ask the jury be instructed to disregard the question.

THE COURT: I will so instruct the jury.

MR. JACKSON: Thank you very much.

5. Increased similarity of the extrinsic and charged offenses aggravates the risk of unfair prejudice. *United States v. Beechum,* 582 F.2d at 915 n. 20.

6. Fed.R.Evid. 612 provides:

Except as otherwise provided in criminal proceedings by section 3500 of title 18, United States Code, if a witness uses a writing to

mony with a showing that the witness needed to review the report to revive his recollection. *See J. H. Rutter Rex Manufacturing Co. v. NLRB,* 473 F.2d 223, 239 (5th Cir.), *cert. denied,* 414 U.S. 822, 94 S.Ct. 120, 38 L.Ed.2d 55 (1973); *Thompson v. United States,* 342 F.2d 137, 139 (5th Cir.), *cert. denied,* 381 U.S. 926, 85 S.Ct. 1560, 14 L.Ed.2d 685 (1965); *NLRB v. Hudson Pulp & Paper Corp.,* 273 F.2d 660, 665 (5th Cir. 1960); III Wigmore § 758 n. 3 (Chadbourn rev. 1970). Because the agent's testimony was not prefaced with the requisite showing of need, his testimony should not have been admitted unless it came within the Jencks Act exception to rule 612. As Jencks material, the surveillance report could have been used by the agent to refresh his memory without the prior showing of need, because the Jencks Act bars disclosure of a government witness' reports or statements until the witness has testified on direct examination. 18 U.S.C. § 3500(a).

■ Although it delays disclosure of the witness' report or statement until the conclusion of the witness' direct examination, the Jencks Act also mandates disclosure at that time, upon the defendant's motion. *Id.* Appellant claims that the prosecutor did not surrender the surveillance report at the appropriate time, but waited until the middle of defense counsel's cross-examination of the surveillance agent before proffering the report. The record does not support his assertion. Rather, it indicates that defense counsel requested and received the surveillance report at the conclusion of another agent's testimony much earlier in the trial. Record at 86.

Without any greater merit is appellant's argument that the surveillance report was somehow "constructively" made part of the evidence in contravention of Fed.R.Evid. 803(8)(B).[7] The record gives no indication that the report was ever admitted, constructively or otherwise.

### CONCLUSION

Because the extrinsic offense evidence in this case violated Fed.R.Evid. 404(b), appellant's conviction is REVERSED and REMANDED. Additionally, we caution government counsel on retrial to use the police surveillance reports in careful compliance with Fed.R.Evid. 612 and the Jencks Act, 18 U.S.C. § 3500 (1976).

**REVERSED AND REMANDED.**

---

refresh his memory for the purpose of testifying, either—
(1) while testifying, or
(2) before testifying, if the court in its discretion determines it is necessary in the interests of justice,
an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness. If it is claimed that the writing contains matters not related to the subject matter of the testimony the court shall examine the writing in camera, excise any portions not so related, and order delivery of the remainder to the party entitled thereto. Any portion withheld over objections shall be preserved and made available to the appellate court in the event of an appeal. If a writing is not produced or delivered pursuant to order under this rule, the court shall make any order justice requires, except that in criminal cases when the prosecution elects not to comply, the order shall be one striking the testimony or, if the court in its discretion determines that the interests of justice so require, declaring a mistrial.

7. Fed.R.Evid. 803(8) provides:
(8) Public records and reports.—Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.