**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Rodolfo GONZALEZ–LIRA,
Defendant–Appellant.**

**No. 90–2609.**

United States Court of Appeals,
Fifth Circuit.

July 9, 1991.

Arnulfo Guerra, Jr., Roma, Tex. (Court-appointed), for defendant-appellant.

Jeffery A. Babcock, Jr. and Paula C. Offenhauser, Asst. U.S. Attys., Houston, Tex., for plaintiff-appellee.

Before POLITZ, JOHNSON and GARWOOD, Circuit Judges.

JOHNSON, Circuit Judge:

Rodolfo Gonzalez–Lira appeals from his conviction for possession of marijuana with intent to distribute it. He argues that the trial judge erred in admitting certain evidence and that the evidence was not sufficient to support his conviction. After a careful review of the record and the controlling case law, this Court concludes that it must affirm the judgment of the trial court.

## I. FACTS AND PROCEDURAL HISTORY

At 7:45 in the morning on Monday, February 26, 1990, Rodolfo Gonzalez–Lira drove a tractor-trailer rig up to the U.S. border station outside Falfurrias, Texas. He owned the truck tractor, but the refrigerated trailer was not his. Gonzalez produced for the border patrol agent a bill of lading which purported to have been prepared on May 25, 1989 (nearly a year earlier), and called for delivery of the load of lettuce (which was supposedly in the trailer) to an address in Austin, Texas by 6:00 a.m. that Monday morning. Gonzalez' breath smelled of alcohol. The border patrol agent directed Gonzalez to the secondary inspection area. Once there Gonzalez consented to a search of the trailer, unlocking the padlock himself. The agent found several boxes of spoiled lettuce at the rear of the trailer and detected an odor of marijuana. The agent called for a drug-sniffing dog, and canine "Barko" alerted several times outside the trailer. A search turned up bundles of marijuana stacked three deep along the length of the trailer. All told, the bundles weighed 3,243 pounds. On his person, Gonzalez carried no wallet, no identification, and no papers. He had $652 in cash, a key to the trailer, and a piece of paper with the name Ramsey and two phone numbers written on it.

Gonzalez was informed of his rights and questioned about his cargo. He stated that he had only recently purchased the tractor from an outfit in Edinburg, Texas.[1] He claimed that on the previous Friday night, February 23, an unknown man had offered him $500 to drive a cargo of lettuce north; on Saturday, this unknown man supplied the trailer, already loaded. On Sunday, the unknown man gave Gonzalez a bill of lading. Gonzalez professed to be wholly unaware of the presence of the marijuana.

At trial the prosecutor sought to introduce evidence that two years earlier, an individual named Moreno attempted to

---

1. At trial, Gonzalez claimed that he had actually purchased the tractor not from the outfit in Edinburg, but rather from some unknown man.

cross the border at the same inspection point in a tractor-trailer rig owned by Gonzalez. Moreno was stopped, and a search of the truck revealed some 2,000 pounds of marijuana. Moreno was convicted of possession with intent to distribute, but Gonzalez was not charged, and no evidence was ever developed to show that Gonzalez knew what Moreno was going to do with his truck. Gonzalez was allowed to retrieve his truck from the authorities; he later sold it and used a portion of the proceeds to purchase the truck used in this case. The careful trial judge initially granted the defense's motion *in limine* to forbid any mention of this other truck. At trial, however, the judge allowed the Government to introduce, over the defendant's objection, the testimony of an investigating police officer relating to the other truck and the prior smuggling attempt.

Before admitting the evidence, and out of the hearing of the jury, the court explained that

I'm going to overrule the objection. I'm going to allow the questions on two grounds. First of all, I think the defense has attempted to impeach the integrity of the investigation and thoroughness of the investigation of the United States authorities. And I think that the effort [the investigating officer] has shown goes to show that he was trying to get to the bottom of this. He followed up the lead on the other tractor-trailer.

Secondly, I think it's admissible under 404. The reason I think that is because [defense] counsel in opening statement stated to the jury ... that the question was knowledge and intent. [Defense counsel] put the issues of knowledge and intent directly before the jury in [his] opening statement and [has] continued to do so with respect to the interrogation of the [investigating officer] and the witness from the ... Border Patrol.... Specifically, [defense counsel's] questions dealt with, "did he know it was there" and "no, he just happened to pick up a load of spoiled lettuce". All of these issues going to demonstrate to the jury that this was a thoroughly innocent act on the part of the defendant, and that

he had no knowledge of the ton of marijuana—ton and a half of marijuana in his trailer rig. But this evidence with respect to the other tractor-trailer shows previous to this event the fact that this defendant owned a tractor-trailer rig that was used in marijuana smuggling. And that it was the very tractor-trailer rig that was the subject and provided the money for that tractor in this particular transaction. And under those circumstances, there is not only the evidentiary tie-in from the previous ownership but also the mental intent and the knowledge that this defendant is well aware that tractor-trailer rigs are used for smuggling and that his own in the past has been used for smuggling, and it has been used in this same manner and at the same checkpoint, and that he has retrieved it....

2 R. 81–82. The trial judge concluded: "I find that the probative value on the issue of knowledge and intent, as well as the probative value on the issue of credibility, outweighs the prejudicial value of the 404 evidence." 2 R. 83.

Armed by this ruling, the prosecutor then elicited the following testimony from the investigating officer.

Q: All right. During your investigation into this case, did you learn of any other truck that was registered to the defendant?

A: Yes, sir, I did.

Q: And what kind of truck was that, sir?

A: It was a 1979 International tractor.

Q: All right. And would that be an International Freightliner?

A: Yes, sir.

Q: And what kind of tractor was involved in this very case that we're here about today?

A: Also a '79 Freightliner.

Q: But two different Freightliners?

A: Yes, sir.

Q: All right. Now, did your investigation disclose whether or not that other Freightliner that was registered to the defendant and owned by the defendant

had ever been in the custody of the United States Government or of any local government?

A: Yes, I did.

Q: And what government had it been in the custody of?

A: In December of '88, the Drug Enforcement Administration Task Force in Corpus Christi seized the vehicle.

Q: Okay, and where was that vehicle seized?

A: The vehicle was seized at Falfurrias, Texas Border Patrol checkpoint.

Q: All right. And when it was seized at the Falfurrias checkpoint at that time, was there a trailer attached to it?

A: Yes, sir, there was.

Q: What was in the trailer of the vehicle at that time?

A: There were 2,000 pounds of marijuana.

Q: All right. Now was the defendant driving the vehicle at that time?

A: No, sir, he was not.

Q: Did anybody ever make arrangements to get that vehicle back from the Government?

A: Yes, sir.

Q: Who was that?

A: Mr. Rodolfo Gonzalez through his attorney, Raul Garcia, contacted the Nueces County Sheriff's Department in August of '89, paying off a $1,200 storage fee, to have the vehicle released to their custody.

Q: All right. And did Mr. Gonzalez himself pick it up or somebody else?

A: A subject by the name of Jose Lopez picked up the tractor and trailer.

2 R. 84–86. The prosecutor then introduced into evidence a photograph of the first tractor-trailer rig, and indicated that he was finished with the witness.

The Government's examination of the witness, however, did not end at that point. When the prosecutor indicated that he had no further questions, the court called for the attorneys to approach the bench. The court asked the prosecutor if he was going to question the agent about the fact that Gonzalez had sold the first tractor-trailer

and used part of the proceeds to purchase the tractor used in this case. 2 R. 86–87. The court reminded the prosecutor that "that's one of the reasons for the admissibility of this evidence," and that its admissibility was not predicated on "just this 404 type stuff." 2 R. 87. The prosecutor responded that he had just "overlooked" that line of questioning and resumed his examination. He elicited testimony to the effect that Gonzalez had sold that first rig for $12,000 and used $4,000 of that money to purchase the tractor used in this case. 2 R. 87–88. When the Government finished with the witness the trial court instructed the jury that it was to use the testimony it had just heard only for the limited purposes of deciding how thorough the Government's investigation had been and whether Gonzalez had the requisite knowledge or intent. 2 R. 88–89. Neither party voiced any objection to the limiting instruction. 2 R. 89.

The jury returned a verdict of guilty. Gonzalez timely appeals, arguing that the evidence regarding the prior smuggling attempt should not have been admitted, and that the evidence was insufficient to support his conviction.

## II. DISCUSSION

### A. Admission of the Evidence Concerning the Prior Smuggling Attempt

Gonzalez argues that it was prejudicial error for the trial court to allow the testimony concerning the truck he had previously owned, particularly to the extent that such testimony linked Gonzalez to a crime for which he was never indicted or charged, much less convicted. The Government contends that the decision to admit the testimony was correct on both grounds relied upon by the trial judge: first, that the evidence was relevant to the issues of Gonzalez' intent and knowledge, and was therefore admissible under Fed.R.Evid. 404(b), and second, that the defendant opened the door to the evidence by inquiring into the thoroughness of the officer's investigation of the case.

### 1. Admissibility under Rule 404(b)

Rule 404(b) is a rule that both excludes and admits evidence.[2] It excludes evidence of a defendant's character when that evidence is introduced solely for the purpose of showing that the defendant had a bad character and that he acted in conformity with it. On the other hand, Rule 404(b) admits evidence of prior bad acts by the defendant introduced to prove things unrelated to character, such as the defendant's state of mind.

■■■ The basic test for deciding whether Rule 404(b) authorizes the admission of evidence of prior acts is well settled. In order to be admissible under Rule 404(b), the evidence of the defendant's prior bad acts must meet two criteria: 1) it must be relevant to some issue other than the defendant's character, and 2) its probative value must be greater than its potential to unfairly prejudice the jury. *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978) (en banc), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979). For instance, Rule 404(b) permits the prosecution to introduce evidence of a defendant's prior bad acts if that evidence tends to establish the defendant's knowledge or intent, or a particular *modus operandi* of the defendant. *United States v. Brookins*, 919 F.2d 281, 285 (5th Cir.1990).

The admission of evidence under Rule 404(b), however, carries with it certain well-recognized dangers. As this Court warned in *Beechum*,

[o]ne of the dangers inherent in the admission of extrinsic offense evidence is that the jury may convict the defendant not for the offense charged but for the extrinsic offense.

582 F.2d at 914. The *Beechum* court added, in language applicable to this case, that

[t]his danger is particularly great where, as here, the extrinsic activity was not the subject of a conviction; the jury may feel that the defendant should be punished

for that activity even if he is not guilty of the offense charged.

*Id.* "It is for this fear," the court added, "... that extrinsic offense evidence is excluded when it is relevant solely to the issue of the defendant's character." *Id.*

■■■ In order to minimize the "particularly great" danger presented by admission of evidence of a prior bad act which did not result in a conviction, this Court has insisted that evidence proffered under Rule 404(b) meet certain minimum criteria. In particular, before the trial court even begins to assess the probative value and potential prejudice of evidence of prior bad acts, that evidence must first have crossed a threshold requirement of relevancy: the prior bad acts to be laid before the jury must be shown to be relevant to the defendant. That is, there must be some proof that it was the defendant who committed those acts. In the absence of such proof, the evidence of those acts is of no help to the jury, as it is not possible to say that those acts reflect anything at all about the defendant. As this Court has previously put it, "[t]he predicate to relevance of an extrinsic offense is proof that the defendant actually committed the offense." *United States v. Jimenez*, 613 F.2d 1373, 1376 (5th Cir.1980) (citing Beechum).

■■■ The Government is not required to show that the defendant was convicted as a result of the prior bad acts; by its terms, Rule 404(b) encompasses "wrongs" and "acts" in addition to "crimes." Also, there is no requirement that the prior conduct even have resulted in an indictment or a formal charge. *See United States v. Fowler*, 735 F.2d 823, 830 (5th Cir.1984) (in prosecution for conspiracy to defraud government procurement office, prosecution properly allowed to introduce evidence that defendants had previously engaged in similar scheme, even though they had not been indicted for that scheme). However, the Government must at least provide *some evidence* that the defendant committed the

2. Federal Rule of Evidence 404(b) provides:
    Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity there-

with. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

prior bad act. In the language of our prior cases, the Government must provide evidence sufficient to allow a reasonable jury to find that the defendant committed the act. *See, e.g., United States v. Mortazavi,* 702 F.2d 526, 528 (5th Cir.1983); *United States v. Robinson,* 700 F.2d 205, 213 (5th Cir.1983), *cert. denied,* 465 U.S. 1008, 104 S.Ct. 1003, 79 L.Ed.2d 235 (1984).[3]

■ Viewed even against this generous standard, however, it is clear that the Government did not establish a proper basis under Rule 404(b) for admission of the testimony concerning the prior smuggling attempt. The Government presented no evidence at all that it was Gonzalez who committed that offense. Because there was no showing that the prior acts to be laid before the jury were the acts of Gonzalez, the evidence was not shown to meet the threshold relevancy requirements of Rule 404(b). Thus, as this Court put it in *Jimenez,* "the extrinsic offense evidence los[t] the race toward admissibility before even reaching the starting mark." 613 F.2d at 1376.

**2. Admissibility under Rules 401 and 403**

■ The fact that the testimony regarding the prior smuggling attempt may not have been admissible as a prior act of Gonzalez under Rule 404(b) does not end the inquiry. As noted, the problem under Rule 404(b) was that the Government failed to establish the relevancy of the evidence of the prior smuggling attempt by failing to make any showing that Gonzalez played any role in that offense. The fact that the evidence was not shown to be relevant for purposes of Rule 404(b), however, does not mean that the evidence is not relevant. Under the Federal Rules of Evidence, "[r]elevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case." Fed.R.Evid. 401, Advisory Committee Note.[4] Thus, although the evidence may not be relevant as evidence of a prior bad act, it may well be relevant on other grounds, and admissible under other rules of evidence.

**3.** This standard was first adopted in this Circuit in *Beechum.* The Court there held that the standard of proof under Rule 404(b) was provided by Fed.R.Evid. 104(b), which relates to the admission of evidence when its relevancy is conditioned upon the existence of another fact.

The judge need not be convinced beyond a reasonable doubt that the defendant committed the extrinsic offense, nor need he require the Government to come forward with clear and convincing proof. The standard for the admissibility of extrinsic offense evidence is that of rule 104(b): "the preliminary fact can be decided by the judge against the proponent only where the jury could not reasonably find the preliminary fact to exist."

*Beechum,* 582 F.2d at 913.

Until recently there was some division among the Circuits as to what standard of proof should apply to attempts to introduce evidence of prior bad acts. Several other circuits, for instance, had required the Government to prove that the defendant had committed the prior bad act by clear and convincing evidence. *See, e.g., Manning v. Rose,* 507 F.2d 889, 892 (6th Cir.1974); *United States v. Wormick,* 709 F.2d 454 (7th Cir.1983); *United States v. Wilford,* 710 F.2d 439 (8th Cir.1983). The Second Circuit had held that the Government had to prove that the defendant had committed the prior act by a preponderance of the evidence, *United States v. Leonard,* 524 F.2d 1076, 1090–91 (2d Cir.1975), *cert. denied,* 425 U.S. 958, 96 S.Ct. 1737, 48

L.Ed.2d 202 (1976), and although its general standard appears to have been one of clear and convincing proof, the Ninth Circuit suggested at one point that the proof had to be beyond a reasonable doubt. *Compare United States v. Herrera–Medina,* 609 F.2d 376 (9th Cir.1979) (clear and convincing) *with United States v. Testa,* 548 F.2d 847, 851 n. 1 (9th Cir.1977) (beyond a reasonable doubt). *See generally* 2 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 404[10] at 404–70—404–73 (1990 and Supp. 1991).

The Supreme Court resolved the conflict in *Huddleston v. United States,* 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988). In that case, Chief Justice Rehnquist wrote for a unanimous Court that "[e]vidence is admissible under Rule 404(b) only if it is relevant," and that "[i]n the Rule 404(b) context, similar act evidence is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor." 108 S.Ct. at 1501 (citing *Beechum* ). The Supreme Court thus adopted the test that had prevailed in this Circuit.

**4.** Federal Rule of Evidence 401 defines "relevant evidence":

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Indeed, the district court found that the evidence that Gonzalez had owned a tractor-trailer rig which had been used in a prior smuggling attempt was relevant to several issues in the case. As the trial judge pointed out in his ruling admitting the evidence, that evidence tends to show at least four things: 1) the thoroughness of the Government's investigation, 2) the defendant's awareness that tractor-trailer rigs are used to smuggle large quantities of marijuana across the border, 3) the defendant's awareness that his own tractor-trailer rig had been used to smuggle marijuana across the border at the Falfurrias checkpoint, and 4) the source of the funds used to purchase the tractor involved in this case.[5] Given that this evidence was relevant to so many issues, the only question is whether it should nonetheless have been withheld from the jury.

As a general matter, all relevant evidence is admissible. Fed.R.Evid. 402. Of course, relevancy has its limits: the rules of evidence provide that even if it is relevant, evidence may be excluded if it is cumulative of other evidence, will confuse or mislead the jury, or presents a danger of unfair prejudice to the defendant. Fed.R. Evid. 403. Gonzalez contends that the evidence relating to the prior smuggling attempt was prejudicial, and therefore should have been excluded. In support of his contention he cites the language quoted above from the *Beechum* case, pointing out the danger that the jury may have convicted Gonzalez for a crime he did not commit.

While the Court agrees that there may have been some danger of unfair prejudice to Gonzalez, the Court is also persuaded that that danger was greatly reduced by two factors. First, defense counsel was entitled to—and did—cross-examine the investigating officer, bringing out the fact that there was never any evidence developed against Gonzalez with respect to the prior smuggling attempt. 2 R. 93–94. Such an admission by the Government's own witness undoubtedly reduced the chance that the jury would convict Gonza-

lez for the prior smuggling attempt. Second, the trial judge explicitly instructed the jury that they were to use the evidence only for the limited purposes of deciding how thoroughly the Government had investigated the crime and what Gonzalez' state of mind was when he was stopped at the border. These limiting instructions were entirely proper. Combined with the defense's ability to bring out the truth on cross-examination, this Court is confident that the introduction of the evidence relating to the prior smuggling attempt would not lead the jury to convict Gonzalez for that prior crime.

In the end, though, the question before this Court is not whether the evidence relating to the prior smuggling attempt was prejudicial, or even whether it was admissible; the question on review is whether the district court abused its discretion when it decided to admit the evidence. When confronted with a question of whether to admit relevant evidence pursuant to Rules 401 and 402, or to exclude it on one of the grounds set forth in Rule 403, the trial court must weigh the probative value of the evidence against its potential to do the harms set out in Rule 403. "Situations in this area call for balancing the probative value of and need for the evidence against the harm likely to result from its admission." Fed.R.Evid. 403, Advisory Committee Note. This balancing depends greatly on the trial judge's perception of the positions of the parties, the exigencies of the case, and the likely effect of the contested evidence on the jury. Accordingly, the weighing conducted by the trial judge is given great deference on review: the court of appeals will reverse the decision only upon a clear showing that the trial judge has abused his considerable discretion. *E.g., Jon–T Chem., Inc. v. Freeport Chem. Co.,* 704 F.2d 1412, 1417 (5th Cir.1983); *Wright v. Hartford Acc. & Indem. Co.,* 580 F.2d 809, 810 (5th Cir.1978).

Gonzalez has not shown a clear abuse of discretion by the district court. The proba-

---

**5.** It should be pointed out that the careful trial judge relied on each of these grounds in deciding to admit the evidence. The trial judge did *not* simply rely on Rule 404(b). *See* Part I above.

tive value of evidence here was substantial. It tended to show, quite strongly, not only that the Government had engaged in a thorough investigation, but also that Gonzalez knew that marijuana was smuggled across the border in tractor-trailer rigs, and indeed that it had been smuggled in his own tractor-trailer. The evidence thus allowed the jury to infer that Gonzalez knew what was in the trailer when he attempted to bring it across the border. While the evidence regarding the prior smuggling certainly carried some risk of prejudice—it may have linked Gonzalez to criminal activity of which he was innocent—that danger was sufficiently reduced by the trial judge's limiting instruction to the jury,[6] and the defense counsel's cross-examination of the investigating officer. On the whole, this Court simply cannot say that the trial judge's weighing of the evidence and decision to admit it amounted to a clear abuse of discretion.

### B. *Sufficiency of the Evidence*

■ Gonzalez' second argument is that the evidence before the jury was not sufficient to allow it to convict him. This argument has little force. Gonzalez' conviction must be sustained if, considering the evidence in the light most favorable to the Government, a rational trier of fact could have found that the evidence established each of the elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *United States v. Brookins*, 919 F.2d 281, 284 (5th Cir.1990). The elements which the Government must prove to convict a defendant of possession of marijuana with intent to distribute are 1) knowing 2) possession of marijuana with 3) intent to distribute it. *United States v. Diaz–Carreon*, 915 F.2d 951, 953 (5th Cir. 1990). The requirements for proving each of these elements are well settled.

### 1. Possession

■ Possession may be either actual or constructive and may be proven either by direct or circumstantial evidence. *E.g., United States v. Lindell*, 881 F.2d 1313, 1322 (5th Cir.1989). Constructive possession has been defined as ownership, dominion, or control over the contraband, or over the vehicle in which the contraband was concealed. *E.g., United States v. Posner*, 868 F.2d 720, 722–23 (5th Cir.1989).

### 2. Knowledge

■ Similarly, knowledge of the presence of a controlled substance may be inferred from the exercise of control over the vehicle in which it is concealed. *United States v. Olivier–Becerril*, 861 F.2d 424, 426–27 (5th Cir.1988). To prove knowledge when the contraband is hidden, however, the Fifth Circuit requires that in addition to mere presence in the vehicle, or control over it, there be circumstances evidencing a consciousness of guilt on the part of the defendant. *Diaz–Carreon*, 915 F.2d at 954.

### 3. Intent to distribute

■ Finally, intent to distribute the marijuana may be inferred from the fact that the defendant is in possession of a large amount of it. *United States v. Romero–Reyna*, 867 F.2d 834, 836 (5th Cir. 1989).

### 4. The evidence

■ There is little question that the evidence before the jury was sufficient to allow it to find that each of these elements were present. Gonzalez owned and drove a truck which hauled a trailer loaded with one and a half tons of marijuana. Gonzalez had keys to the trailer. He was an experienced trucker, but claimed not to have noticed the flaws in the bill of lading. His story about how he came by the trailer was implausible and his story about why he was late in reaching his destination contained inconsistencies. Previously, a truck Gonzalez had owned had been used in an almost identical attempt to smuggle marijuana across the border. Plainly there was enough evidence for the jury to conclude

---

**6.** The jury, of course, is presumed to have followed the instruction. *Marshall v. Lonberger,* 459 U.S. 422, 438 n. 6, 103 S.Ct. 843, 853 n. 6, 74 L.Ed.2d 646 (1983).

that Gonzalez knew what was in the trailer and that he intended it for distribution.

## III. CONCLUSION

The evidence concerning the prior smuggling attempt was not shown to be relevant under Fed.R.Evid. 404(b) as evidence of a prior act of Gonzalez. Rule 404(b), therefore, did not authorize the admission of that evidence. However, the evidence was relevant to other issues and on other grounds, and the trial court did not abuse its discretion in admitting it under Rules 401, 402, and 403. Finally, the evidence before the jury—including the evidence concerning the prior smuggling attempt—was sufficient to allow the jury to find that the Government had established each of the elements of Gonzalez' crime beyond a reasonable doubt. Accordingly, the judgment of the district court must be affirmed.

AFFIRMED.

GARWOOD, Circuit Judge, specially concurring:

I concur in all of Judge Johnson's able opinion except insofar as it indicates the challenged evidence does not come within the second sentence of Rule 404(b). As Judge Johnson correctly points out, this evidence

> "tended to show, quite strongly, ... that Gonzalez knew that marijuana was smuggled across the border in tractor-trailer rigs, and indeed that it had been smuggled in his own tractor-trailer. The evidence thus allowed the jury to infer that Gonzalez knew what was in the trailer when he attempted to bring it across the border."

This being true, the evidence was admissible to show "knowledge" and "absence of mistake," as Judge Johnson's opinion recognizes in connection with Rule 401. However, "knowledge" and "absence of mistake" are also proper purposes under the second sentence of Rule 404(b). Of course, the challenged evidence must be connected to the defendant in order for it to be admissible. But in these circumstances that is equally true for purposes of Rule 401. And, it seems to me that such a connec-

tion—whether for Rule 401 or Rule 404(b) —need only be sufficient to connect the defendant with the aspects of the prior events which give rise to the inference that on this occasion he acted with knowledge and not by reason of mistake. That was sufficiently shown by the evidence that he owned the similar tractor used in the prior drug smuggling operation, that when he recovered it from the authorities he knew it had been used in such an operation, and that he then used its sales proceeds to purchase the tractor he drove on this occasion. We come out in the same place, but I believe the majority takes an unnecessary detour along the way.