# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 30, 2009

Charles R. Fulbruge III
Clerk

No. 08-40191

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

PAULINA GARCIA-GRACIA

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before JOLLY, DAVIS, and DeMOSS, Circuit Judges.

PER CURIAM:[*]

Appellant Paulina Garcia-Gracia (Garcia) was convicted by a jury of conspiracy to possess with intent to distribute cocaine and conspiracy to import cocaine. On appeal, Garcia challenges the district court's denial of her motion for judgment of acquittal, the court's admission of prior acts evidence, and whether remarks made by the prosecutor require reversal. Alternatively, Garcia seeks a remand by this court for a new trial. For the foregoing reasons, we affirm the judgment of Garcia's conviction.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. Factual and Procedural Background

On February 5, 2007, Garcia arrived at a checkpoint at the United States border, entering from Mexico. Garcia was driving a Chevrolet Monte Carlo. Anastacio Hurtado-Torres (Torres), her boyfriend's brother, was the only passenger. During a preliminary inspection, Garcia told Custom and Border Patrol (CBP) Officer Fransisco Urbina that she had been in Matamoros, Mexico, for a dentist appointment and was on her way to Corpus Christi, Texas, where she lived. Garcia told Urbina that the Monte Carlo belonged to her. The Monte Carlo generated a Treasury Enforcement Communication System (TECS) hit and was referred to secondary for further inspection. At secondary, Garcia told CBP Officer Jose Leal that the Monte Carlo belonged to her boyfriend, Fransisco Hurtado (Hurtado), and that he was currently incarcerated. Garcia also told Leal she was traveling to Corpus Christi because she lived there. During the inspection of the Monte Carlo, CBP Officer Jaime Gonzalez noticed that the rear floor of the Monte Carlo appeared to be raised four to five inches higher than normal. Officers removed the back seat, carpet, and drain plugs on the floor of the car, and discovered a hidden compartment. A narcotics dog alerted to silver packages that were visible in the hidden compartment on the passenger side of the car. The officers were unable to access the packages through the floor. Officers struck the rocker panels on the side of the car, revealing a non-factory "trap-door" on both the driver and passenger sides of the car, which provided access to the compartment. No drugs were recovered from the driver's side of the car. The packages were covered in plastic, wet mustard, and metal tape, and contained what was later confirmed as cocaine. In total, 19.85 kilograms of cocaine were recovered from the car.

Garcia was taken into custody; she waived her *Miranda* rights, and was questioned by Immigration and Customs Enforcement (ICE) Special Agent Maria Bernal. Garcia denied knowledge of the hidden compartment and the

drugs. Garcia told Bernal that she had not had access to the Monte Carlo since Hurtado's arrest during a January 5, 2007 border crossing.[1] Garcia said she took the car to Hurtado's father's house in Matamoros, Mexico, then took a bus back to Corpus Christi where she stayed for two or three weeks. Garcia stated that she did not use the Monte Carlo again until the date of her arrest. For the first time, Garcia stated that she was going to Corpus Christi to visit her daughter in the emergency room. She told Bernal that she had originally planned to take the bus to Corpus Christi that day, but had changed her mind and agreed to ride with Torres in the Monte Carlo. She could not recall whose idea it was to travel in the Monte Carlo. At the time of her arrest, Garcia had two pre-paid cell phones and $2,390 in cash on her person, which she told Bernal was for the February 5, 2007 dentist appointment in Matamoros.

On February 20, 2007, Garcia was indicted on four counts: (1) conspiracy to possess with intent to distribute more than 5 kilograms of cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1); (2) knowingly and intentionally possessing with intent to distribute more than 5 kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A); (3) conspiracy to import more than 5 kilograms of cocaine, in violation of 21 U.S.C. §§ 963, 960; and (4) knowingly and intentionally importing more than 5 kilograms of cocaine, in violation of 21 U.S.C. §§ 952(a), 960.

At trial, Garcia testified that she lived in Matamoros with Hurtado approximately eighty percent of the time, spending the remainder of her time in Corpus Christi, where she rented an apartment. Garcia testified that she had, in fact, driven the Monte Carlo before her February 5, 2007 arrest, as evidenced by a border crossing in the car on January 14, 2007. Garcia testified that the

---

[1] Hurtado and Garcia crossed the border on January 14, 2007. Hurtado was driving and Garcia was the sole passenger. Hurtado was arrested on an outstanding warrant for a parole violation.

reason she was traveling to Corpus Christi on February 5, 2007, was to visit her daughter in the emergency room, and that Torres had offered her a ride in the Monte Carlo because he was also traveling to Corpus Christi. Garcia testified that Torres had been driving the car, but asked Garcia to drive just before they crossed the border because he was high on crack cocaine. Garcia denied all knowledge of the hidden compartment and the cocaine.

On July 18, 2007, a jury found Garcia guilty of the conspiracy counts. Garcia was sentenced to 121 months in prison, five years of supervised release, and a $200 special assessment. The district court denied Garcia's motion for judgment of acquittal. Garcia timely filed a notice of appeal.

## II. Analysis

### A.    Sufficiency of the evidence

Garcia preserved her challenge to the sufficiency of the evidence, thus we review her motion for judgment of acquittal de novo. *See United States v. Anderson*, 174 F.3d 515, 522 (5th Cir. 1999). "In reviewing the sufficiency of the evidence, we view the evidence and the inferences drawn therefrom in the light most favorable to the verdict, and we determine whether a rational jury could have found the defendant guilty beyond a reasonable doubt." *United States v. Mitchell*, 484 F.3d 762, 768 (5th Cir. 2007). "The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, and the jury is free to choose among reasonable constructions of the evidence." *Anderson*, 174 F.3d at 522 (quotations omitted).

To sustain Garcia's conspiracy convictions, the government must establish (1) an agreement between two or more persons to violate the narcotics law; (2) that Garcia knew of the conspiracy agreement; and (3) that Garcia voluntarily participated in the conspiracy. *See United States v. Thomas*, 348 F.3d 78, 82 (5th Cir. 2003) (quoting *United States v. Booker*, 334 F.3d 406, 409 (5th Cir. 2003)). "Direct evidence is not required; each element may be inferred from

circumstantial evidence." *United States v. Cardenas*, 9 F.3d 1139, 1157 (5th Cir. 1993). Garcia challenges the sufficiency of the evidence to establish that she had the requisite knowledge. "Knowledge of the conspiracy may be inferred from a collection of circumstances." *Id.* at 1157 (quotations omitted).

Garcia was in control of the vehicle containing the cocaine at the time the car was stopped. Generally, a jury may infer a defendant knows about the presence of drugs if she exercises control over a vehicle containing controlled substances. *See United States v. Resio-Trejo*, 45 F.3d 907, 911 (5th Cir. 1995). However, when drugs are hidden in a vehicle, control of the vehicle alone is insufficient to prove knowledge. *United States v. Gonzalez-Lira*, 936 F.2d 184, 192 (5th Cir. 1991). Because of the possibility that a defendant may be an unwitting carrier, "this court has normally required additional circumstantial evidence that is suspicious in nature or demonstrates guilty knowledge." *Resio-Trejo,* 45 F.3d at 911 (quoting *United States v. Anchondo-Sandoval*, 910 F.2d 1234, 1236 (5th Cir. 1990)). Circumstantial evidence of guilty knowledge may include inconsistent statements, implausible explanations, possession of a large sum of money, and obvious or remarkable alterations to a vehicle. *United States v. Ortega Reyna*, 148 F.3d 540, 544 (5th Cir. 1998) (citations omitted).

"Perhaps the strongest evidence of a criminal defendant's guilty knowledge is inconsistent statements to federal officials." *United States v. Diaz-Carreon*, 915 F.2d 951, 954-55 (5th Cir. 1990). "Inconsistent statements are inherently suspicious; a factfinder could reasonably conclude that they mask an underlying consciousness of guilt." *Id.* at 955. Garcia gave multiple inconsistent statements to border patrol officers at the initial stop and secondary inspection, to Agent Bernal during her interrogation, and during her trial testimony. Garcia told the agents at primary and secondary inspection that the purpose of her visit was to pay the rent and other bills at her apartment in Corpus Christi. It was not until

Bernal questioned Garcia after her arrest that she stated that she was traveling to Corpus Christi to visit her daughter in the emergency room.[2]

Garcia also told Bernal that she had picked up Torres before driving to the border, but could not remember whose idea it was to travel in the Monte Carlo, despite the fact that they had left Matamoros only a few hours prior. At trial, Garcia denied that she had picked up Torres, claiming that she was planning to take the bus and was offered to ride to Corpus Christi with Torres, who was planning to drive to Corpus Christ to visit his daughter. Garcia said that she took over driving just before the border crossing because Torres was high on crack cocaine and could no longer drive safely.

Garcia also made inconsistent statements regarding her access to the Monte Carlo. During Bernal's questioning, Garcia stated that following Hurtado's arrest, she had driven the car back to Hurtado's father's house in Matamoros where she left the car, and took a bus back to Corpus Christi where she stayed for two or three weeks. This was inconsistent with a border crossing Garcia made in the Monte Carlo on January 14, 2007, a time when she initially claimed no access to the car. Garcia's trial testimony contradicted these statements. Garcia testified that after Hurtado was arrested, she left the car in the United States, walked across the border, and was picked up once she entered Mexico. Garcia testified that she used the car once on January 14, 2007, and then had no access to the car again until the day of her arrest.

Garcia also offered an implausible explanation for her visit to Mexico on February 5, 2007. "A less than credible explanation" may be part of the overall circumstantial evidence upon which the jury can infer guilty knowledge. *See Diaz-Carreon*, 915 F.2d at 955. Garcia told CBP officers that she had been in Matamoros for a dentist appointment on the day in question. However she was

---

[2] The record shows that Garcia's daughter was admitted to the emergency room on February 5, 2007, complaining of a headache and was released a few hours later.

unable to recall even a single detail about her dentist, including the name or location of her dentist. This explanation is further questionable considering that she had lived in Matamoros eight months, spent the majority of her time there, and had been to the dentist over five times since June 2006, including a visit on February 2, 2007, and again allegedly on February 5, 2007, the date of her arrest. Garcia was also in possession of a large amount of cash, which she had claimed was, in part, to pay for the dental work allegedly performed earlier that day.

Other circumstantial evidence also supports the jury's verdict. There were obvious alterations to the vehicle. An officer noticed that the transmission hump in the back of the car was raised only three inches from the floor, rather than the usual five to six inches. Officer Leal testified that this discrepancy would cause the seat of the driver to sit higher than normal. In fact, officers that sat in the seat had to crouch forward so their heads did not hit the roof of the car. *See United States v. Casilla*, 20 F.3d 600, 607 (5th Cir. 1994) ("[A]n average person would have realized that the flooring in the van had been altered because it was raised over four inches and the back seats were above the top of the front seats, stadium-style."). Garcia was in possession of two pre-paid cell phones, which she said belonged to Hurtado, and the jury heard testimony from Agent Bernal that this was consistent with drug trafficking because they are untraceable. Garcia's posession of a large amount of cash is also common with drug traffiking. *See Ortega Reyna*, 148 F.3d at 544 (noting that in hidden compartment cases, possession of large amounts of cash by a defendant may be considered circumstantial evidence of guilt). Bernal also testified that smugglers are often given cash in advance in order to pay for expenses. Garcia was in posession of $2,390, while Torres was in possession of only $300.The mustard found on the outside of the cocaine packaging was still wet, indicating recent application. After Garcia was told that the drugs had been found, she never implicated

Torres, but rather stated that it must have been Hurtado because of his past conviction of smuggling, despite the fact that he had been incarcerated since January 5, 2007. Garcia did not tell Bernal that she lived in Matamoros, rather she stated only that she lived in Corpus Christi. This court has recognized that it is unlikely that an unknowing, innocent driver would be entrusted with a large amount of narcotics with a high value because the risk is high that an unknowing smuggler would discover the drugs, inform the authorities, or try to sell the drugs, depriving the dealer of the profits. *See United States v. Martinez-Moncivais*, 14 F.3d 1030, 1035 (5th Cir. 1994). The jury heard testimony that the value of the cocaine found in the Monte Carlo was in excess of $300,000. The jury could reasonably rely on this other circumstantial evidence to infer Garcia's knowledge of the cocaine's existence.

Garcia argues that these inconsistencies and implausibilities can be attributed to equally credible innocent explanations, specifically asserting miscommunication between herself and the officers. However, the jury had the benefit of hearing Garcia testify in her own defense and was able to draw all reasonable inferences and make credibility determinations. The jury was entitled to reject the explanations of the her involvement in, and knowledge about, the drugs. Garcia's mere presence at the center of the criminal activity does not stand alone as the only evidence of her knowing participation in the conspiracy. Because there are several other facts that, when added to her presence and control of the vehicle, provide ample evidence to support the jury's verdict finding her guilty, we affirm the district court's order finding sufficient evidence.

## B.    Admission of prior acts

The district court admitted evidence of a border checkpoint stop in which Garcia had been involved on December 24, 2006. On that day, Garcia was a passenger in a Nissan Altima, which she owned. Hurtado was driving the car.

CBP Officer Daniel Saenz testified that during an inspection he discovered a hidden compartment under the rear seat cushion. The compartment was empty and Garcia and Hurtado were allowed to continue into the United States. The officers did not tell Garcia that they had found the compartment. Rather, when Garcia asked why they were paying so much attention to her vehicle, Saenz responded, "You know what's in that vehicle. You know why we're paying so much attention to it." Garcia's name and the vehicle information were flagged and entered into the TECS system.[3] Garcia asserted at trial that she did not know the Altima had a hidden compartment. The district court expressed concern that there was little evidence to establish Garcia's knowledge of the hidden compartment in the Altima but ultimately admitted the evidence over Garcia's objection and gave the jury a limiting instruction before Saenz was dismissed and again in the jury charge.[4]

"We review the district court's admission of extrinsic over a [Federal Rule of Evidence] 404(b) objection under a heightened abuse of discretion standard." *United States v. Jackson*, 339 F.3d 349, 354 (5th Cir. 2003) (internal quotation marks omitted). "Evidence in criminal trials must be strictly relevant to the particular offense charged." *Id.*

Evidence of other crimes, wrongs, or acts are inadmissible to show that the defendant acted in conformity with his or her bad character. FED. R. EVID.

---

[3] It was this TECS entry that led to Garcia being sent to secondary inspection when she drove the Monte Carlo across the border on February 5, 2007.

[4] The court gave the following limiting instruction: "You've heard the testimony of Daniel Saenz, Chris Bernal, and Paulina Garcia-Gracia concerning the defendant's Nissan Altima and the compartment that was found in that vehicle. Ms. Garcia-Gracia has denied knowledge of the existence of that compartment. You must not consider this evidence in deciding if the defendant committed the acts charged in the indictment. However, you may consider it for other limited purposes. If you find beyond a reasonable doubt from other evidence in this case that the defendant did commit the acts charged in the indictment, then you may consider this evidence to determine whether the defendant had the knowledge or intent to commit the acts charged in the indictment."

404(b). Such evidence may be admissible, however, "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id*. The purpose of Rule 404(b) is to "guard against the inherent danger that the admission of 'other acts' evidence might lead a jury to convict a defendant not of the charged offense, but instead of an extrinsic offense." *United States v. Crawley*, 533 F.3d 349, 353 (5th Cir.), *cert. denied* 129 S. Ct. 522 (2008) (quotations omitted). "Where the extrinsic activity did not result in a conviction, this danger is particularly great." *Id*. The district court found that the extrinsic evidence was relevant and probative of Garcia's knowledge and intent for the charged crimes. This court uses the two step approach set forth in *United States v. Beechum,* 582 F.2d 898 (5th Cir. 1978) (en banc)*,* to determine whether extrinsic evidence was admissible. "First, it must be determined that the extrinsic offense evidence is relevant to an issue other than the defendant's character. Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of [Federal Rule of Evidence] 403." *Id*. at 911.

We find that the district court abused its discretion in admitting the evidence of the prior act because this evidence was not strictly relevant to the offense with which Garcia was charged. The government argues that the facts of the December 24, 2006 stop and the February 5, 2007 arrest are sufficiently similar, pointing to the following: on both occasions Garcia was stopped at a border checkpoint arriving from Mexico; Garcia was the owner of the vehicle stopped on December 24, 2006, and was the operator of the vehicle stopped on February 5, 2007; and both cars had hidden compartments. The government argues that this evidence is relevant to show Garcia had the requisite knowledge and intent to commit the crimes with which she was charged.

Evidence of prior bad acts "must first have crossed a threshold requirement of relevancy: the prior bad acts to be laid before the jury must be

shown to be relevant to the defendant. That is, there must be some proof that it was the defendant who committed those acts. In the absence of such proof, the evidence of those acts is of no help to the jury, as it is not possible to say that those acts reflect anything at all about the defendant. As this Court has previously put it, '[t]he predicate to relevance of an extrinsic offense is proof that the defendant actually committed the offense.'" *Gonzalez-Lira*, 936 F.2d at 189 (quoting *United States v. Jimenez*, 613 F.2d 1373, 1376 (5th Cir. 1980)); *see also Beechum*, 582 F.2d at 911 ("[T]he relevancy of the extrinsic offense derives from the defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic and charged offenses. The reasoning is that because the defendant had unlawful intent in the extrinsic offense, it is less likely that he had lawful intent in the present offense."). "[T]he government must at least provide *some evidence* that the defendant committed the prior bad act." *Gonzalez-Lira*, 936 F.2d at 189-90 (emphasis in original).

The government failed to establish that Garcia had any knowledge of the hidden compartment in the Altima. *See United States v. Greenfield*, 554 F.2d 179, 186 (5th Cir. 1977) (stating that "[t]he weakness lies in the circumstance that the evidence shows no contemporaneous knowledge or intent" during the prior act); *see also Jimenez*, 613 F.2d at 1376 (finding extrinsic evidence of prior possession where defendant denied knowledge of possession should not have been admitted because under the circumstances, "no reasonable jury could have found appellant guilty of the alleged cocaine possession"). We fail to see how the introduction of a prior act of which there is no evidence of knowledge or intent can be offered specifically to show the element of a defendant's knowledge or intent to commit the present offense. Without any evidence that Garcia actually knew that the Altima had a hidden compartment, it simply cannot be relevant

to establish her knowledge or intent in the present matter.[5] Because we find that the evidence of the prior act is not relevant to the present matter, we need not determine whether the probative value of the evidence outweighed the prejudicial effect of its admission.

We must next determine whether the admission of the evidence was harmless error. Erroneous admissions under Rule 404(b) are subject to a harmless error analysis. *Crawley*, 533 F.3d at 353. An error is harmless when it does not affect the substantial rights of a party. *Id.* The government has the burden of establishing harmlessness beyond a reasonable doubt. *United States v. Nguyen*, 504 F.3d 561, 571 (5th Cir. 2007).

When other evidence of guilt is overwhelming and the error does not substantially influence the jury's verdict, the error is harmless. *United States v. Hawley*, 516 F.3d 264, 268 (5th Cir. 2008), *cert. denied*, 129 S. Ct. 994 (2009); *see also United States v. Hare,* 150 F.3d 419, 424 (5th Cir. 1998) (stating that the erroneous admission of 404(b) evidence will be rendered harmless if the overwhelming evidence points to the defendant's guilt)*; United States v. Tomblin*, 46 F.3d 1369, 1388 (5th Cir. 1995); *United States v. Williams*, 957 F.2d

---

[5] The district court admitted the evidence under the "theory of probability," also known as the "doctrine of chances," which states that "[t]he prosecution need not prove the defendant guilty of the prior offense so it would seem to be enough if the circumstances of the prior incident are such as to increase the probability of knowledge in the instant case. If, however, the prior crime is apparently unwitting, its admissibility can be justified only on a theory of probability; that is, either that [it] is unlikely that the defendant could have been an innocent participant in two crimes or that it is likely that in some unprovable fashion he would have received notice." 22 CHARLES ALAN WRIGHT & KENNETH W. GRAHAM, JR., FEDERAL PRACTICE AND PROCEDURE § 5245 (1978 & Supp. 2008). Applying this theory, juries may make the logical inference that successive, similar events are not attributed to chance, but to intentional design. 2 WIGMORE ON EVIDENCE § 302 (3d ed. 1940). This court has recognized this approach on at least two occasions when determining whether a prior act should be admitted to show intent. *See Beechum*, 582 F.2d at 911; *United States v. Kirk*, 528 F.2d 1057, 1060 n.2 (5th Cir. 1976). However, we are not persuaded that the circumstances presented in this case allow for the admission of the extraneous evidence under the theory of probability to show knowledge or intent. One prior act with only a few similarities is simply not enough to establish that the prior act was more than mere coincidence.

1238, 1244 (5th Cir. 1992). We have also held that "the improper admission of . . . evidence [under Rule 404(b)] may be cured by appropriate limiting instructions." *United States v. Gordon*, 780 F.2d 1165, 1174 & n.4.; *see also Jimenez*, 613 F.2d at 1377 (limiting jury instructions may ameliorate the prejudicial nature of the admission of the prior act evidence).

We find that the erroneous admission of the prior act evidence does not warrant reversal. The evidence supporting Garcia's conviction is substantial. Garcia's multiple inconsistent statements to CBP and ICE officers and during her trial testimony regarding the purpose of her visit to Matamoros on the day in question, the purpose of her trip to Corpus Christi, her access to the Monte Carlo, and the reason for the large amount of cash on her person supports the jury's guilty verdict beyond a reasonable doubt. Garcia also gave implausible explanations regarding her knowledge of the dentist and whose idea it was to drive the Monte Carlo across the border. Alterations to the vehicle were obvious and readily noticeable by the CBP officers. Garcia was in possession of two pre-paid cell phones belonging to her incarcerated boyfriend, and the large amount of narcotics and the high value of the drugs she was entrusted with make it less likely that she was an unknowing smuggler. Because of the overwhelming evidence of Garica's guilt presented by the government and the appropriate limiting instruction twice given by the district court, any error committed by the district court in admitting evidence of Garica's prior act was harmless beyond a reasonable doubt.

## C. Allegations of prosecutorial misconduct

When objected to, this court reviews allegedly improper comments for abuse of discretion. *United States v. Gracia,* 522 F.3d 597, 600 n.2 (5th Cir. 2008). When not objected to, comments are reviewed for plain error. *Id*. "To demonstrate reversible plain error, [Garcia] had to show that (1) there is error; (2) it is plain; and (3) it affected [her] substantial rights." *Id*. at 600. Even if

Garcia meets this burden, we will generally not reverse unless the plain error "seriously affected the fairness, integrity, or public reputation of the judicial proceeding." *Id.* (citing *United States v. Mares*, 402 F.3d 511, 515 (5th Cir. 2005)).

When reviewing a charge of prosecutorial misconduct, this court must first determine whether or not the prosecutor's remark was, in fact, improper. *See United States v. Fields*, 483 F.3d 313, 358 (5th Cir. 2007). If so, we must then consider whether the remark prejudiced the defendant's substantive rights. *Id.* "[A] criminal defendant bears a substantial burden when attempting to demonstrate that improper prosecutorial comments constitute reversible error." *Diaz-Carreon*, 915 F.2d at 956. Improper prosecutorial comments require reversal only, when taken as a whole in the context of the entire case, the comments substantially affected the defendant's right to a fair trial. *United States v. Hitt*, 473 F.3d 146, 161 (5th Cir. 2006). To make this showing, the court focuses on three factors: (1) the magnitude of the prejudicial effect of the prosecutor's remarks; (2) the efficacy of any cautionary instruction by the judge; and (3) the strength of the evidence supporting the conviction. *United States v. Lowenberg*, 853 F.2d 295, 302 (5th Cir. 1988). Garcia asserts that the prosecutor made improper remarks on four separate occasions, only one of which was objected to.

First, Garcia argues that the prosecutor "vouched" for Bernal's testimony when she was questioned about whether the prosecutor told her to tell the truth. Because Garcia objected to the questioning, we review for abuse of discretion. *See Gracia*, 522 F.3d at 600 n.2. A personal assertion by a prosecutor of a government witness's credibility is impermissible; however no personal opinion or statement vouching for Agent Bernal's credibility was made by the prosecutor. *Cf. United States v. Young*, 470 U.S. 1, 18-19 (1985) (prosecutor vouched for the credibility of witnesses and expressed his personal opinion concerning the guilt

of the accused). Rather, the prosecutor was merely rebutting Garcia's accusations that the agents had been lying. We find that the prosecutor's line of questioning was not improper and therefore there was no error.

Second, Garcia challenges a line of questioning by the prosecutor during her cross examination. During her direct testimony, Garcia had stated that the testimony of Urbina and Bernal was inaccurate. The prosecutor asked Garcia whether she though the agents were either "lying or mistaken." Garcia did not object to the questioning at trial. Garcia argues that the prosecutor was trying to "force Garcia to accuse the witnesses of lying." However, the prosecutor's questioning was intended as a response to Garcia's effort to expose the government witnesses as untruthful or at least inaccurate. *See United States v. Thomas*, 12 F.3d 1350, 1367 (5th Cir. 1994). These remarks are not improper and therefore there was no error.

Third, Garcia asserts that during closing arguments, the prosecutor encouraged the jury to find her guilty by way of her association with a family of drug smugglers, specifically that: Hurtado was a former drug dealer; Torres was high on crack cocaine as they approached the border checkpoint on February 5, 2007; and Hurtado was kidnapped was beaten by his other brothers because they thought Garcia and Torres had stolen the drugs to sell themselves. Garcia did not object at trial. "[E]vidence of guilt by association is extremely prejudicial;" however an instruction to disregard is generally deemed sufficient, unless the remark is so highly prejudicial that it is incurable by the court's admonition. *United States v. Pando Franco,* 503 F.3d 389, 395 (5th Cir. 2007). Evidence of Hurtado's criminal past and beating, and Torres's drug use had been introduced during trial and the Government drew reasonable inferences therefrom in its closing argument. The jury had been instructed that statements made during closing argument were not to be considered as evidence and the remark was not so highly prejudicial so as to be incurable. "We presume that

15

such instructions are followed unless there is an overwhelming probability that the jury will be unable to follow the instruction and there is a strong probability that the effect [of the improper statement] is devastating." *United States v. Gallardo-Trapero,* 185 F.3d 307, 321 (5th Cir. 1999) (quotations omitted). There was no reversible error.

Fourth and finally, Garcia challenges the following statement made by the prosecutor during closing argument: "[Are the discrepancies in Garcia's statements] because there's a conspiracy between all these federal agents against this defendant, or is it because this defendant keeps changing her lies to get out of trouble as our investigation learns more and more? Somebody is lying to you. Now, is it all those agents . . . have they all gotten together from some reason, and a woman that they've never met before that day . . . decided we're going to put our careers on the line, we're going to lie, and we're going to make sure she does something– she does time for something she doesn't deserve? Is that reasonable? Does that make common sense?" Garcia did not object at trial. Garcia argues that the prosecutor was telling the jury that in order to find her not guilty the jury would have to believe in a government conspiracy against her. This court has "deemed improper an unequivocal statement by a prosecutor that, for the jurors to believe the defense's account, they would have to believe in a government conspiracy." *Gracia*, 522 F.3d at 601-02. We find that the prosecutor's remark was improper; however Garcia has failed to sufficiently demonstrate that this comment requires reversal. The district court cautioned the jury that statements made during closing arguments were not evidence. There was no reversible error.

## D.    Motion for new trial

Finally, Garcia requests that this court remand the matter for a new trial arguing that, at a minimum, the verdict was against the great weight of the evidence. Garcia did not move for a new trial before the district court. Garcia's

argument for this court granting a new trial is premised on this court's finding enough doubt as to the defendant's guilt, even if not sufficient to require acquittal, such that a new trial is warranted. Assuming arguendo that this court had the power to grant such a motion, we deny Garcia's request as the evidence supports her conviction beyond a reasonable doubt.[6]

### III. Conclusion

For the foregoing reasons, we affirm the district court's denial of Garcia's motion for judgment of acquittal, and find no reversible error in the district court's admission of prior acts evidence or the prosecutor's remarks.

AFFIRMED.

---

[6] Garcia argues that when there is strong doubt as to the defendant's guilt, a district court is "obliged to grant a new trial," citing to *United States v. Morales,* 910 F.2d 467, 468 (7th Cir. 1990), for support. Garcia asserts that 28 U.S.C. § 2106, which grants appellate courts the power to "remand the cause . . . as may be just under the circumstances," extends the same power of the district court to grant a new trial to an appellate court. In *United States v. Nguyen*, 507 F.3d 836 (5th Cir. 2007), the defendant made a similar argument. Although *Nguyen* recognized that other circuits had created an exception to the general rule that a defendant must timely move for a new trial in the district court, it found that the Fifth Circuit has never applied this exception and declined to do so in that case. *Id.* at 839-40.

E. GRADY JOLLY, Circuit Judge, specially concurring:

I concur in the panel's thorough opinion, except insofar as it holds that evidence of the December 24 border crossing was inadmissible under Rule 404(b) to prove Garcia-Gracia's knowledge of the Monte Carlo's hidden compartments.

There is no convincing reason why the December 24 crossing, when agents discovered hidden compartments in the Altima that Garcia-Gracia had owned for more than year, is not admissible to prove Garcia-Gracia's knowledge of the Monte Carlo's hidden compartments. But for the fact that the Altima's hidden compartments were empty, the December 24 crossing was identical to the February 5 crossing for which she is being tried. The mere fact that Garcia-Gracia owned a car that had hidden compartments – a car that was given to her by the Monte Carlo's owner no less – is clearly relevant to her knowledge of the Monte Carlo's similar hidden compartments. That she denied knowledge of the hidden compartments in a car she owned for a year is clearly a subject on which to test her credibility that she was innocent of all knowledge of the drug operation around her. Thus, the December 24 crossing was both highly relevant to and probative of Garcia-Gracia's knowledge, a permissible purpose under Rule 404(b), and I would hold that the district court did not abuse its discretion in admitting it.