**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 17, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

GILBERTO LEYVA,

     Defendant-Appellant.

No. 10-2208
(D.C. No. 1:09-CR-00746-LH-1)
(D. N.M.)

-----------------------------------------------

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

ALEJANDRO REYNA,

     Defendant-Appellant.

No. 10-2224
(D.C. No. 1:09-CR-00746-LH-2)
(D. N.M.)

**ORDER AND JUDGMENT**[*]

Before **GORSUCH**, **HOLLOWAY**, and **MATHESON**, Circuit Judges.

---

   [*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Gilberto Leyva and Alejandro Reyna were convicted of drug and conspiracy charges after police officers who pulled them over for speeding discovered a large quantity of methamphetamine hidden in their truck's radiator. *See* 21 U.S.C. § 841(b)(1)(A); 21 U.S.C. § 846. On appeal, they raise three challenges to their convictions, arguing that the government presented insufficient evidence at trial to suggest they knew of the drugs; that the district court erroneously admitted expert testimony from a governmental agent; and that the court improperly interjected during defense counsel's closing argument. We address each argument in turn but ultimately find none warrants reversal.

We begin with Mr. Leyva and Mr. Reyna's sufficiency challenge. As they frame it, the question this court must decide is whether the government presented sufficient evidence to permit a rational jury to conclude that they knew of the drugs hidden in the radiator. In answering this question we are obliged to view the facts in the light most favorable to the government, as the prevailing party, and we may ask only whether, in light of the facts so viewed, any rational juror could have concluded (as this jury did) that the defendants knew of the drugs. *United States v. Arras*, 373 F.3d 1071, 1073 (10th Cir. 2004).

In approaching this question, however, we immediately confront another. The defendants argue we can assess the sufficiency of the evidence based *only* on the facts presented during the government's case in chief. This, they say, is due to the operation of Federal Rule of Criminal Procedure 29. As this court has

interpreted Rule 29 (and the defendants do not challenge this interpretation), if a district court "denies a motion" for a judgment of acquittal made at the close of the government's case in chief and a defendant proceeds to offer evidence of his own, we may look to *all* of the evidence when examining its sufficiency, including evidence from the defendant's case and the government's rebuttal. *See United States v. Delgado-Uribe*, 363 F.3d 1077, 1082 (10th Cir. 2004). But if the district court "reserve[s] decision on the motion," the district court's later ruling, and our sufficiency review, must be limited solely to evidence adduced in the government's case in chief. *See United States v. Finn*, 375 F.3d 1033, 1037 (10th Cir. 2004).

So the question becomes whether the district court in this case "denied" or "reserved decision on" the defendants' Rule 29 motion at the close of the government's case in chief. And answering that question in this case turns out to be a tricky business. After the defendants made their motion, the judge said that he was "going to have to deny the motion at this time. I'll take the matter under advisement." Clearly, this left things unclear. On the one hand, the court used the word "deny." On the other, it proceeded to qualify its denial in a way that suggested it had not actually reached a firm decision. At the end of trial, another exchange took place that shed a bit more light on things. Defense counsel asked to "renew the Rule 29 motion that was taken under advisement" and noted that "there was some question in the court's mind at the time about the evidence."

The court replied that the "motions will be denied" without disputing counsel's characterization of its prior action as taking the motion under advisement rather than as an outright denial.

Ultimately, however, nothing turns on how we characterize the district court's statements and actions. Even assuming that the defendants are correct in construing the court as having reserved the question at the close of the government's case, and that our review is accordingly limited to the facts presented in the government's case in chief, those facts are sufficient as a matter of law for a rational juror to have concluded both defendants knew about the drugs.[1]

We begin with Mr. Reyna. He was the passenger in the truck and several facts taken together suffice in combination to allow a rational juror to have concluded that he knew of the concealed contraband.

---

[1] Given the defendants' separate challenge to the admissibility of the government's expert witness, a question we take up in a moment and on which we assume without deciding an error existed, we not only limit ourselves to the evidence presented during the government's case in chief but we also exclude any consideration of the expert's testimony.

We pause, however, to note that at least one of our sibling circuits has held that when there's doubt about the meaning of the district court's ruling on a Rule 29 motion, it is incumbent upon the defendant to seek clarification. *See United States v. Alejandro*, 118 F.3d 1518, 1520 (11th Cir. 1997). We need not pass on that question in this case, however, given that the government hasn't asked us to do so and its outcome wouldn't alter the ultimate disposition of this appeal.

First, our precedents hold that the sheer quantity of drugs seized in this case can support an inference of knowledge. The truck in which the defendants were traveling was found to contain nine pounds of 96% pure methamphetamine, and under our case law a jury could conclude that a drug dealer wouldn't entrust such a valuable payload to individuals wholly ignorant of its presence. *See United States v. Rodriguez*, 192 F.3d 946, 950 (10th Cir. 1999).

Second, Mr. Reyna provided a suspicious story to police. He told the officers that he and Mr. Leyva were on their way to Denver from Phoenix to watch a Rockies game at Coors Field. Mr. Reyna said he didn't know who the Rockies were playing — and that is perhaps no surprise because it was March and the evidence showed that opening day at Coors Field hadn't yet occurred. A jury could conclude from Mr. Reyna's willingness to lie to the police about his travel plans that he harbored knowledge of the hidden drugs. *See United States v. Hooks*, 780 F.2d 1526, 1532 (10th Cir. 1986).

Third, the police found a number of items inside the truck that may suggest knowing involvement in drug trafficking. Officers uncovered multiple air fresheners inside the small truck cabin, which this court has held can suggest an intent to mask the scent of concealed drugs. *See United States v. Lazcano-Villalobos*, 175 F.3d 838, 843 (10th Cir. 1999). The officers found just a single key in the ignition, which they testified can sometimes indicate that the occupants may be drug couriers. *See United States v. Calvo-Saucedo*, 409 F. App'x 21,

23–25 (7th Cir. 2011) (single key in the ignition helped support probable cause in light of officer's testimony that it "could mean that the vehicle was a drug courier's 'drop car' which could be left with its cargo at the delivery point for someone else to retrieve"). And one of the officers testified that he discovered a pre-paid cell phone in the truck that could be procured without providing identification — a fact consistent with the possibility that the defendants were engaged in illicit activity and sought to avoid detection. *See United States v. Garcia-Garcia*, 324 F. App'x 286, 291 (5th Cir. 2009) (possession of pre-paid cell phones can provide circumstantial evidence of drug trafficking because of their untraceability).

Fourth, the strongest evidence against Mr. Reyna was his physiological reaction. As the traffic stop progressed and the officers on the scene became increasingly suspicious, they opened the hood of the trunk and noticed signs that the radiator had been tampered with recently. While the officers were discussing whether to drain the radiator to search for drugs, a second squad car appeared on the scene and, at that point, Mr. Reyna began vomiting on the side of the highway. Mr. Reyna's counsel made a valiant stand at oral argument, declaring that his client's reaction was probative of nothing more than dyspepsia. But a reasonable jury might be excused for concluding instead that the sudden bout of nausea was triggered by Mr. Reyna's growing awareness that he was about to be caught with nine pounds of methamphetamine.

Although the government's case against Mr. Leyva may be somewhat weaker, it too is legally sufficient to show that he knew of the drugs. Many of the facts that bear on Mr. Reyna's guilt also apply to Mr. Leyva. As discussed above, the sheer volume of the drugs involved provides support for an inference of knowledge. Likewise, the presence of a number of indicators of drug trafficking, including multiple air fresheners, a single key in the ignition, and the presence of the pre-paid Boost Mobile phone, provide additional circumstantial evidence of Mr. Leyva's knowing involvement.

The fact that Mr. Leyva was the driver of the vehicle could also be suggestive to a rational juror. This court has said that "it is permissible to infer that the driver of a vehicle has knowledge of the contraband within it." *United States v. Levario*, 877 F.2d 1483, 1485–86 (10th Cir. 1989), *overruled on other grounds by Gozlon-Peretz v. United States*, 498 U.S. 395 (1991). Although some cases have questioned whether the fact that the defendant was driving is sufficient *by itself* to show his knowledge of the drugs when there are also passengers in the vehicle, *see Lazcano-Villalobos*, 175 F.3d at 844–45, we need not resolve that question here. It's enough for now to acknowledge, as our precedents uniformly do, that driving a vehicle containing contraband can, along with other evidence, support an inference of knowledge.

Mr. Leyva's sustained nervous reaction further helps establish that he knew of the drugs and feared he'd been caught. Of course, nervousness alone proves

little because almost everybody is nervous when stopped by police. *See United States v. Ludwig*, 641 F.3d 1243, 1250 (10th Cir. 2011). But this court has held that when nervousness is extreme and does not dissipate over the course of the encounter, it can lend at least some degree of support to a finding of guilty conscience. *United States v. Williams*, 271 F.3d 1262, 1268–69 (10th Cir. 2001). Here, the officer who spoke with Mr. Leyva during the traffic stop testified that he wouldn't make eye contact, spoke very rapidly, was shaking nervously, and answered questions evasively. The officer testified that this reaction was more intense than the typical nervous reaction of an innocent individual pulled over by the police during a traffic stop, and that it did not subside during the course of the stop. Combined with all the other evidence adduced by the government, these facts contributed something to the evidentiary picture and, under our case law, suffice to allow a rational jury to conclude that Mr. Leyva knew of the drugs.

As we alluded to earlier, the defendants separately appeal the admission of testimony from the government's expert witness, Drug Enforcement Agency ("DEA") Task Force Officer Coleman. At the time of trial, Officer Coleman had been a DEA officer for only a few months but had five years prior experience in state and local law enforcement and had taken training programs on drug trafficking operations. He offered expert testimony for the government on a wide range of topics — from the economic value of the drugs to the operation of Mexican methamphetamine productions labs. The defendants argue that the

officer's testimony was not supported by a sufficient on-the-record reliability finding or by a sufficiently reliable methodology and should have been excluded under Federal Rule of Evidence 702.

We need not decide those questions, however, because even assuming without deciding the district court erred in allowing the testimony, any such error was harmless. *See* Fed. R. Crim. P. 52(a). An error is harmless unless it can be said to have "had a substantial influence on the outcome" of the trial or "leaves one in grave doubt as to whether it had such effect." *United States v. Turner*, 285 F.3d 909, 914 (10th Cir. 2002) (quotation omitted). The burden of showing harmlessness is on the government, and in this case it is a burden the government has carried.

Not only did the government present other sufficient evidence of the defendants' guilt in its case in chief, evidence we have already outlined above, but much of what came in later in the trial only tended to confirm the point. During his defense, Mr. Leyva testified that he had traveled from Mexico and that Mr. Reyna (his nephew, it turns out) picked him up in Phoenix, en route to Denver to watch an exhibition soccer match between Bolivia and Mexico. But this story was significantly undercut by Mr. Leyva's lack of any concrete plans: he had no tickets and didn't know what time the game was to be played, what stadium it was being played at, where they were planning to stay in Denver, or how they were to return. His story was also undercut by its inconsistency with

Mr. Reyna's (also questionable) story that they were going to a Rockies game in Denver in March. Moreover, Mr. Leyva testified that Mr. Reyna had picked up the truck and was planning to "drop off" the truck at some unknown location, a suspicious statement that seemed to implicate Mr. Reyna.

The government's rebuttal evidence further solidified the case against the defendants. One of the officers who had conducted the traffic stop testified that Mr. Leyva told him that they had borrowed the truck from a man named Martinez. Though Mr. Leyva couldn't provide this man's full name, he provided a number of details, including that Martinez was from Salt Lake and had supposedly lent the truck to Mr. Leyva to drive from Phoenix to Denver. Yet on cross examination, Mr. Leyva denied knowing anything about the owner of the truck, repeatedly disclaimed any knowledge of Martinez, and testified that he never mentioned the name to the officer. A jury could draw a strong inference that Mr. Leyva knew of the contraband on the basis of his evasiveness about the owner of the vehicle.

Confirming the harmlessness of the putative error is the superfluity of Officer Coleman's testimony. Even without Officer Coleman's testimony about the value of the drugs, it is obvious that nine pounds of nearly pure methamphetamine is a distributable quantity. The officer's testimony that the drugs likely came from "super labs" in Mexico and were distributed through a "source city" such as Phoenix does little to add to the picture already painted that

these particular defendants were part of a drug-running operation.  And Officer

Coleman's opinion that drug organizations rarely entrust highly valuable

quantities of drugs to unknown couriers is no more than a common sense

inference repeatedly recognized in our case law.  *See Rodriguez*, 192 F.3d at 950.

So taking into account the relative strength of the government's case and the

relative unimportance of the challenged testimony, we conclude that any error in

admitting Officer Coleman's testimony was harmless.[2]

Finally, the defendants ask us to reverse their convictions because, they

say, the district judge impermissibly commented on the evidence and prevented

Mr. Reyna's counsel from advancing his theory of the case during closing

argument.  The issue stems from Mr. Leyva's cross-examination of Officer

Coleman, when counsel asked whether he knew what the term "blind mule"

meant.  After Officer Coleman responded that the term referred to someone who

---

[2] On appeal Mr. Reyna advances an admittedly new argument that Officer Coleman's testimony was impermissible not only under Fed. R. Evid. 702 (as he argued in the district court), but also under the Confrontation Clause because the officer's opinions were based on statements of third parties who did not testify. We could possibly reverse on the basis of such a newly crafted appellate argument, however, only on a showing that all four elements of the plain error standard are satisfied.  To mount a successful Confrontation Clause challenge, Mr. Reyna would have to show (among other things) *both* that any out of court statements relied upon by Officer Coleman were testimonial, and that he merely "parrot[ed]" that testimonial hearsay instead of using such statements to inform his own independent opinion.  *See United States v. Pablo*, 625 F.3d 1285, 1292–93 (10th Cir. 2010).  On this record, neither of those conclusions would be at all plain.  In any event, and for the reasons we've already given, we believe that any such error would be harmless beyond a reasonable doubt.  *See United States v. Summers*, 414 F.3d 1287, 1303 (10th Cir. 2005).

is focused on a single objective, counsel asked whether it was instead a term for an unwitting courier of drugs. Officer Coleman professed that he was unfamiliar with that particular use of the term, but he answered "yes" when asked whether he had ever heard of individuals transporting drugs without knowing about them.

Fast forward to closing argument. Mr. Reyna's counsel advanced the argument that drug dealers sometimes use innocent people to carry their drugs for them to set up a fall guy if the drugs are discovered. He then said that Officer Coleman "didn't know what the term 'blind mule' means. Of course, he's only been with the DEA a short time." Counsel then began to explain that "there is such a concept as a blind mule, someone that transports narcotics without knowing it."

At that point, the district judge interjected, stating that Mr. Reyna's counsel was arguing facts not in evidence. And the judge was right. The judge never prevented Mr. Leyva or Mr. Reyna from presenting their theories of the case, or from calling into question the extent of Officer Coleman's experience, or from referring to Officer Coleman's testimony that he had heard of unwitting couriers, or from introducing their own evidence regarding the term "blind mule." The judge simply stated that there was no evidence in the record of this particular case establishing that the phrase "blind mule" is a term of art in the narcotics business referring to unwitting couriers as opposed to couriers blindly focused on a single object. There was nothing erroneous about the district court's statement, given

the state of the record developed by the parties in this case, and it is beyond argument that a court may intervene to preclude argument in closing based on facts outside the record of the case at hand.

The defendants' convictions are affirmed.

ENTERED FOR THE COURT


Neil M. Gorsuch
Circuit Judge